May it please the Court, Fred Rowley, Jr. for Equilon Enterprises and Pacific Fuel. If I might, I'd like to reserve 13 minutes for my response and rebuttal on the appeal, because there's a lot of issues on the cross-appeal. Equilon's appeal is focused solely on the attorneys' fees issue. The district court erred in awarding attorneys' fees to Pacific Fuel and in failing to award attorneys' fees to Equilon. Equilon was entitled to its attorneys' fees as a matter of law under Section 1717 because it was the prevailing party on all the breach-of-contract claims brought on the MSO agreement. Equilon prevailed on Pacific Fuel's breach-of-contract action, with the jury finding for Equilon on its affirmative defense of fraud and awarding zero damages. Equilon also prevailed on its breach-of-contract counterclaim, with the jury awarding Equilon $80,000. Because Equilon prevailed on all the contract claims, the district court lacked any discretion to award attorneys' fees to Pacific Fuel. It was required as a matter of law to award them to Equilon. Now, the district court considered the jury verdict in Pacific Fuel's favor on the fraud claim, on Pacific Fuel's fraud claim, but under Section 1717's case law, those claims were irrelevant and were not properly considered. The only way that Pacific Fuel would have been entitled to or could have received attorneys' fees was under Section 1021, which in turn depends on the language of the attorneys' fee provision. And the attorneys' fee provision in the MSO agreement is not broad enough to reach fraud in the inducement, which is what Pacific Fuel's fraud claim was based on here. And for that reason, because Pacific Fuel couldn't resort to 1021, and because the attorneys' fees provision does not reach fraud claims, the district court simply erred in awarding Pacific Fuel attorneys' fees here. If you had prevailed on the fraud claims, if you'd successfully defended against them, would you be entitled to claim attorneys' fees because you'd successfully defended the contract? Your Honor, we did seek attorneys' fees under Section 1717, certainly because we prevailed on all the contract claims. If we had prevailed on the fraud claims as well, we wouldn't have invoked 1021 because the attorneys' fee provision simply doesn't reach fraud claims. Well, think about it. What's the attorneys' fees provision say? The attorneys' fees provision says, in relevant part, it says that the prevailing party will be entitled to recover attorneys' fees. The party incurs in order to secure, defend, or protect the rights inuring to the prevailing party under this agreement, or to incur guest charges. Well, it's not fair, because if you had successfully defended against a claim for fraud in the inducement, wouldn't you have done exactly what that provision provides, that is, defend its rights under the agreement, under the contract? Well, Your Honor, again, I think the critical question is what the claims are. How about answering my question? Judge Clifton, I think the critical question is what the claims are that are brought in the case, and our position was that it's the contract claims that matter under this provision. It's not the fraud claims. Is there an answer to the question someplace in there? Your Honor, no. The answer is no. We we we we we You wouldn't have fit that provision because you successfully defended the contract, but you still wouldn't fit the provision? I mean, that's the position you're taking. I understand maybe the position you're taking now, but it's hard for me to believe that's the position you would have taken then. I'm sorry, Judge Clifton. I'll try to answer. We believe that certainly our affirmative defense of fraud to the contract claims, that permits us to invoke. Try the question again. Yes, Your Honor. They claimed fraud in the inducement. Yes, Your Honor. Suppose you had successfully defended against that. Yes, Your Honor. Would you be entitled to attorney's fees under the provision you just read? No, Your Honor. Why not? Because we believe that the provision only covers claims that are brought on the contract. Now, of course, under 1717. Is that what the language you just read says? The party you're let me let me let me go back to the language again. Prevailing party will be entitled to recover attorney's fees. The party incurs in order to secure, defend or protect the rights inerring to the prevailing party under this agreement. Your Honor, under a fraud in the inducement theory, that theory rests on pre-contractual rights and also pre-contractual conduct. It seems to me that you would have done exactly what that says. You would have defended your rights under the contract by defending the contract's validity. Well. So that's why it seems, I mean, I understand the reason for taking the position you're taking now, but it seems illogical to me that you wouldn't have asserted a claim for attorney's fees. Your Honor, our affirmative defense of fraud also rested on a fraud in the inducement theory. The misrepresentations that Equilon relied on at trial made by Mr. Hull were pre-contractual and so they are outside the contract and they were indeed before the contract. But I think what you're saying, I don't know if you're talking past the agreement, but basically that a fraud in the inducement theory, even if you had prevailed on that, that that was not a claim or right under the contract. Is that what you're saying? That's right, Judge McHugh. But isn't that exactly your claim here, where you're asserting a right to attorney's fees because you prevailed on the contract claim, fending off by asserting fraud? Judge Clifton, to the extent that we're relying on the attorney's fees provision, in that sense we are relying on a provision in the contract. But I think, just to get to Judge McHugh's point, the fraud claims on both the fraud affirmative defense asserted by Equilon and the fraud claim asserted by Pacific Fuel, both of those relied on pre-contractual duties, a general duty not to commit fraud, and also pre-contractual conduct, statements, omissions, and also conduct engaged in by the parties before the contract. And so for that reason, we believe that ---- If I were to go back and read your answer in defending on the fraud claim against your client ---- Yes, Your Honor. Would there be anything in there about a request for attorney's fees in your answer? I believe we did request attorney's fees. Oh. I believe ---- I'd have to double-check, Your Honor, but I believe that we did. Even though you now say you're not entitled to them. No. We're entitled to attorney's fees under 1717, Your Honor, based upon our victory on the contract claims. That was ---- I see. So you didn't split out then based upon this or that. You just asked for attorney's fees. I'll have to double-check and look at the answer. But, Your Honor, I believe our theory was that we were entitled to them under Section 1717, which focuses on the contract claims. And that is consistent with the actual language in the attorney's fee provision, which also focuses on the contract claims and rights inuring to the party under the agreement, really rights created by the MSO agreement. And because the contract provision doesn't reach the fraud claims, that's exactly why the district court erred. In mixed cases like this, the California Supreme Court is clear that the case law is clear that only the contract claims can be considered. Santisa says if an action asserts both contract and tort or other noncontract claims, Section 1717 applies only to attorney's fees incurred to litigate the contract claims. So in a mixed case like this, unless the contract language is broad enough to reach tort claims, and it certainly couldn't reach fraud in the inducement claims, then 1717 controls ---- Let's split this up. It is confusing because there's multiple contract claims and you have this $80,000 claim. That's right. And then you have your defense of the big contract, the $10 million claim. That's right. So the position you're taking is that this attorney's fees provision in the contract does not cover pre-contractual claims or tort claims. Is that right? That's right. And it could, however, would you agree that you could write an attorney's fees clause that would be broader than just the rights under the contract? Yes. And it would be an extra contractual obligation. Yes. You could do that. But the situation is like the Gill case where the Court says one might have drawn up an attorney's fees provision to reach the claims that were actually litigated in the case, but the parties didn't do that, and so you have to focus on what the attorney's fee provision covers, and that's the situation we have here. The attorney's fee provision covers only contract claims, and for that reason, the case is really controlled by excess electronics, where you have these tort claims, including claims based on a fraud in the inducement theory, and you had contract claims. The Court walked through all the claims and noted that the attorney's fees provision simply couldn't reach the fraud in the inducement claims because they were based on a pre-contractual duty, and so didn't consider those claims. It didn't award attorney's fees under Section 1021. The district court did not do that here, did not parse through the claims and engage in a discrete 1717 analysis or a 1021 analysis. The Court simply deemed Pacific Fuel to be the prevailing party because Pacific Fuel did prevail on its fraud claim, and the jury did award it what ended up being a million dollars in damages. Let me ask you this. It also got punitive damages, correct? It did. And normally, under California law, you couldn't get that if it weren't a fraud claim, correct? That's right, Your Honor. You couldn't get that under a contract claim in California? Not in California. Okay. You have, I didn't give you the 13-minute warning because you were talking so quickly and I was listening fast. Oh. So, you want to save the remaining time? I should. I should, Your Honor. Thank you. Your Honor, may it please the Court, my name is Jeff King, and I represent the plaintiff Appellee and Cross-Appellant Pacific Fuel. And if I may reserve five minutes of my time for a response on the cross-appeal issues. Before I get into the heart of my argument, I'd like to respond to two questions that were raised. First, a question by Judge Fletcher that was raised regarding whether the fees were sought by Shell based on a fraud cause of action. Actually, in Shell's answer and its counterclaim, which is found in the excerpts of the record 236, Shell's counterclaim brings two tort-related claims in this case. And then after bringing those claims, makes a request to the Court to recover attorney fees on those claims. So it's not a Whether it's 1021 or 1717? There's no statement whether it's 1021 or 1717. Well, let's be honest about that because I've never seen, nor did I see in practice, any answer or complaint that didn't have a broad claim at the end to avoid malpractice or some unhappy client that said, and provide all costs, attorney's fees, and anything else. Anything else I can possibly get my hands on. Anything else I can possibly think of. So the real question is, have they claimed fees under 1717 or 1021 with respect to the tort claims? With respect to the tort claims in this case? Well, they didn't have the opportunity to claim either for the tort claims because they were unsuccessful on the tort claims. Well, but I mean, I'm asking, did they ask specifically in their complaint, I mean, in their answer or cross-complaint for fees under any of the statutory provisions? They were not specific on that. Well, do you, you don't disagree with me that every attorney worth his or her salt puts in a general request for fees, right? No, I certainly don't disagree if the general request is made. I also think that most attorneys worth their salt, if they prevail on a claim and think they have the opportunity to recover fees, will also make a claim to recover fees under that if they believe there's a remote opportunity to do so. Right. The second point, I know there was a question, Judge Clifton, that you had raised regarding fraud and the inducement. In the briefs that are before the Court, there are no fewer than seven cases that are particularly dealt with pre-contractual tort claims, primarily inducement and concealment claims, where California courts, including the California Supreme Court, has found that pre-contractual inducement claims and pre-contractual tort claims can merit the recovery of attorney fees under 1021, and in those cases actually did. Of course, then it's going to turn on what the language, what the parties have agreed  Precisely. And the nature of the claim. This isn't the world's broadest attorney fee provision. It's also not the narrowest I've ever seen. Is there any case law that speaks more directly to the agreement we have in front of us? I think it's fair to say, Your Honor, that this provision is undoubtedly more broad than the one in Excess Electronics, which Shell references, which refers only to enforcing the contract. And I will agree, Your Honor, that it is slightly, though I do believe it's slightly, more narrow than the ones, for instance, in the Santisus case that look to any actual information arising out of or relating to the contract. And that's the difficulty, is that if it were arising out of or related to the contract, there would be no issue. I agree with that. But here, as I read the language, and I'll just tell you what my difficulty is with your argument, is that the language here really does relate to the contract itself, not factual circumstances arising out of it. Leaving aside the enforcement language. So, I'm having trouble figuring out why a pre-contractual claim on inducement is defending and nearing rights under the agreement. Because, well, first of all, Your Honor, in a couple of the pre-contractual cases, what they reference is whether that fraud claim or that tort claim is based on the contract. What is the gravamen of that tort action? That's the first consideration for me. No, but, you know, you really have to read those cases carefully. If you go way back to the way early California case, they're pretty clear that, you know, certainly under 1717, you don't have something just because it relates to the contract that you're going to get fees under 1717. And some of those, if the question is whether the contract should be rescinded as opposed to damages, so that's really a second element we ought to introduce in the discussion, is do you have a case where, in your view, the court has said, well, you can get damages, not just rescind the contract, for this sort of related tort claim? By damages, do you mean you can get attorney fees? No, I mean, well, damages and attorney's fees, yeah, as opposed to rescission as being a remedy. Because there can be claims where you could rescind the contract, and there are cases that talk about that, but it just seemed to me that if you look at Santesis and other claims, they really do try, the California court has been pretty consistent in separating pre-contractual fraud and the inducement from contractual claims. And so, but you're saying you have all these cases, and I read all those cases, so point me to what you think is the best case for your argument. If you look, the best case for the argument that you can fraud and inducement can be broad enough, there's the Zurich case, I apologize if I'm pronouncing that wrong, X-U-E-R-E-V, that looks, I mean, that is a case, that's one of the cases I would certainly direct the court to as far as the breadth. There's also the Lerner v. Ward case, which talks about where the fee clause is sufficiently broad to incorporate a fraud and inducement case when, quote, the tort cause of action arose out of the written agreement. This Court also. See, how can that happen when it happened before? In other words, first you have these events, and then you have the agreement. So how would the pre-contractual tort clause arise out of an agreement that didn't exist? If I may, Your Honor, to answer one of the questions you asked earlier, this case is the perfect example of that. The fraud claims in this case are all, or substantially all, based on the rights contained in the contract itself. Primarily the main right of the contract claim, which is the paragraph 7B right of Pacific Fuel to recover its historic fuel-related expenses for the stations that it operated. There are numerous statements in the record. If you look at paragraphs 56 and 57 of the First Amended Complaint, that is, the First Amended Complaint talks about that as the gravamen of the fraud action being these defraudulent inducements that were made by Shell that this is what the contract says, and this is the rights you'll get under the contract. The entire fraud cause of action was stated, and statements were made to the court, to the district court in this regard. The entire fraud cause of action was stated to protect, secure, and defend the primary right granted under paragraph 7B of the contract, that primary right being the rights to receive these historic fuel-related expenses. In fact, in this claim, had Shell honored its contractual obligations to provide those historic fuel-related expenses, there would have been no fraud. Because if that contractual obligation was honored, the statements that were made numerous times to Pacific Fuel would have been truthful. But if you had a breach of contract claim, correct? Correct. Did you lose on that claim? We won on liability, lost on the ability to recover damages based on the fraud affirmative defense. Right. So basically, you lost on, you have no damages, and you lose on the breach of contract claim with the jury, correct? We were unable to be awarded damages, which I will agree, Your Honor, under California law. Anyway, we won't call it you lost. You didn't get anything. Correct. Certainly correct. So however you characterize it, with respect to the contract itself, there were no damages. And the only damages related to these representations, which are in the very specific verdict forms, and those are tort claims. You could have made findings within the contract claim, presumably, that would have permitted this. But the way these are set up is you walk through the various tort claims, contract claims, et cetera. So I'm having also, maybe you can explain how the verdict structure would support your argument. I would make the point, Your Honor, that we recovered $1.53 million, reduced to $1.06 million, for fraud claims that were brought to protect, enforce, and secure rights inuring under the agreement. There is no question that the primary right litigated on under the agreement is the right under 7B to recover historic fuel-related expenses. That is the gravamen of the fraud action, and by prevailing on that fraud action, that is the right that the civic fuel secured from the jury. That was the right that was protected, secured, and defended, which is why this – it's important to note as you talk about this. Would you get – I'm having some trouble why you got punitive damages then. Because it was a – it was a – Because it was a tort claim. It was a tort claim that was – where the gravamen was in the contract, but these were promises that were made, this is what you're getting. And it was also a concealment. We also got punitive damages for concealment. The historic fuel-related expenses were intentionally concealed from Pacific Fuel by Shell. There was actually a policy on the part of Shell not to disclose the historic fuel-related expenses to Pacific Fuel, and the disclosure of that would have easily illuminated the fact that these contractual-based promises were false. And so those – that concealment was a fraudulent action as well as the fraudulent misrepresentation that could be grounds for punitive damages. Review the betting for me as to why, having won on your contract claim with respect to liability, you nonetheless don't recover damages on the contract claim. Because the district court made – the jury ruled a fraud-affirmative defense on the contract claim in favor of Shell. And the jury asked a question of the court that said, if we find that Shell breached the contract but we also find in favor of them on the fraud-affirmative defense, can we award damages? The district court responded to that question, no, which goes a little bit to one of our first prosecutorial claims as well. And when they responded – the district court responded no, the jury almost immediately returned a verdict of zero damages on the contract claim, even though on the elements of contract claim in the jury form, it found that Shell had breached the contract. Well, they breached the contract, but there's no liability. There's no liability because Shell was allowed to rescind the contract through the fraud-affirmative defense, yet enforce the contract through its counterclaim and retain the benefits of that contract without having to enforce the burdens of the contract, which is the basis of one of our prosecutorial claims as well. When you say they're able to retain the benefit of the contract, would you move to that just so we can understand what you're saying? Certainly. And there are three separate points of retaining the benefit. First of all, they were allowed to, through their counterclaim, recover interest and attorney fees from an affirmative breach of contract action in state court. Secondly, in that state court action, they actually sued Pacific Fuel for over $500,000 on a breach of contract claim, affirming the contract. And they received a settlement obtaining all of that over $500,000 in damages. So they affirmed the contract in court, in the state court, affirmed the contract through the counterclaim and federal district court, and they also were able to retain all of their benefits under the contract. California law is clear that a party that rescinds a contract must give up all of the benefits it retains from the contract. But that would make no sense whatsoever here. Why would your client be able to receive whatever their profits were? Because they were able to rescind the contract based on your client's fraud. The only reason it doesn't make sense here, Your Honors, is the California court noted they couldn't see a scenario where a party who had profited under a contract would ever run or rescind it. Well, we have a scenario here, and that scenario is where a party profited under a contract but didn't have profited in large part because they didn't have to pay their obligations under the contract. And that's fine. What do you mean they didn't have to pay their obligations? Their obligation was the obligation to pay historic fuel-related expenses under Paragraph 7B, which was very grandly obligated. But that would have nothing to do with the profits you're trying to require them to disgorge. But it actually does, because they wouldn't – if they had to pay $10.5 million to Pacific Fuel, Your Honor, clearly they would have made $10.5 million less in profits from this MSO arrangement. What I'm saying, what California law said clearly is you've been defrauded, fraudulently induced into entering into a contract. You have a choice. If the contract is a good contract, the choice that you're likely to make is, well, this contract's been beneficial to me, so if the fraud damaged me, I'll take those damages, but otherwise I'll honor the contract. And if the contract's been bad for you, you will say, well, this contract has been bad for me. I want to get out of it because they fraudulently induced me, so I'm going to rescind. What Shell is trying to do is do both. Say this contract's good for me, so I want the benefits, but yet I'm going to rescind because I don't want to pay the burdens that this contract brings along. Well, is that really all that unusual in the context where the rescission or the learning of the facts that justify rescission come during the term of the contract? I mean, you have the fact that you've got a passage of time during which the parties behaved under the terms of the contract. That has to be unwound in some fashion, whether you do it by applying the contractual terms, quantum error with something else. You do have the reality that during some period of time, the parties were in this arrangement under some terms. The learning of the fraud during the contract is certainly not unusual. The trying to rescind a contract that you are profiting from at the time, as the California Court of Appeals states itself, is very unusual. And that's why we're in this circumstance we are here where I know at first glance it seems a party that committed fraud is getting some benefit from retaining profits at the other side received under the contract seems odd. And I do understand that. But it's odd just in the sense that a party that made money under the contract is trying to get out of a contract that was profitable to it so it can get away from its own obligations thereafter. If I may, Your Honor, one point I want to make on the attorney fee issue very  We've spent a lot of time talking about 1717. Shell focuses on that. No, I think we've been talking almost primarily about the language in the contract. And if I misspoke, Your Honor, Shell has been focusing on 1717 in its briefing today. What Shell does not focus on is under the Adams v. Vecheron case and a number of other cases in that line. The Adams case clearly shows that if you have a party that has prevailed on a contract claim but lost on a tort claim so that the party winning on the tort claim can't recover under 1717 but can under 1021, the 1021 claim trumps the 1717 claim. And the party prevailing on the tort claim recovers their attorney fees and the party prevailing on the contract claim does not, which is exactly what the looking at the Santisis case from the California Supreme Court. Excuse me, I meant the Zurab case. The Zurab case talks about how when you have a 1021 and a 1717 claim, 1021's quote, given the ability of contracting parties to provide for attorney fees under 1021, section 1717's only effect is to make an otherwise unilateral right to attorney fees reciprocally binding on all parties. Essentially what the Zurab case is saying along with the Adams case is if the fee provision under 1021 is broad enough to allow for attorney fee recovery, then the fact that 1717 applies only to contract cases is immaterial. And I would like to leave finally on that and reserve what little time I have left.  We have spoken primarily about the part of the analysis that applies to construing the breadth of the attorney fee provision, which certainly is a de novo review. The other part of the analysis is reviewing the fraud claim itself to decide whether the fraud claim is contract related enough or as Shell's counsel describes itself, quote, the mirror image of the breach of contract claim so that it fits within the confines of that attorney fee provision. That is a finding of fact review for clear error. And in this case between Shell's admission to the district court as well as the district court's findings of fact in this case, that clear error review is quite solidly showing that the fraud claim is extremely contract related. In fact, it's based on the contract. With that, Your Honor, I will reserve the rest of my time. I would just like to follow up on a colloquy that counsel had with Judge McEwen. My friend characterized the fraud claim or the grabberment of the fraud claim as being bound up with the contract. But if you look at the jury instructions and you look at the evidence that was offered in support of the fraud claim, it's clear that it was all part of the pre-contractual, that the duty was pre-contractual and the purported misstatements, the omitted information and the false promises took place before the contract was entered into. The jury instructions were clear that the theory of fraud was one of fraud in the inducement. The jury was instructed Pacific Fuel claims it was harmed because defendants fraudulently induced Pacific Fuel to operate their Shell-branded service stations and participate in the MSO program. And under cases like Perry and Excess Electronics, the law is clear that a fraud claim is not on the contract if the theory is one of inducement. And in that respect ---- Well, even if we agree with you on 1717, it leaves us still with 1021. It does. So would you address that?  It does, Your Honor. Now, if the language in the attorney's fee provision were broad enough to reach a fraud inducement claim, then you would consider the fraud claims along with the contract claims in figuring out who the prevailing party is. But here, again, there's two different aspects of the attorney's fee provision. There's really two elements. The first is the prevailing party will be entitled to recover attorney's fees the rights inerring to the prevailing party under this agreement. And we submit that the most natural reading of that phrase is that it covers actions asserting the rights inerring to the prevailing party under this agreement. In other words, the rights created by the MSO agreement. The second element to enforce the terms thereof is clearly limited to actions on the contract. And that's reflected in the case law. Now, the cases that were cited by my friend in support of their interpretation Another question is. Sure. There's lots of prevailing parties thrown around here because of the different claims. Yes. But on the claims under the agreement. Yes. Who was the prevailing party? On the claims on the MSO agreement? Yes. Equilon was the prevailing party. Because it prevailed both on Pacific Fuel's breach of contract action by way of its affirmative defense of fraud. And it also prevailed on its breach of contract counterclaim because the jury awarded Equilon $80,000. So if the universe of relevant claims is the contract claims, as a matter of law, Equilon was entitled to its attorney's fees. Now, the Zwerab case, the language of the attorney's fees provision in Zwerab and also in Lerner is broader because it uses the phrase arising. I think I'll read the language from the Zwerab decision. The attorney's fees provision said, If this agreement gives rise to a lawsuit or other legal proceeding. And similarly, the language in Lerner also used arising out of language. It says, In any action or proceeding arising out of this agreement. That language is simply broader than the language in the MSO agreement. It really focuses on the rights created by the contract. And those were not the rights that were asserted by Pacific Fuel in its fraud claim. It was asserting precontractual general rights, the rights under tort law. And the evidence that was advanced in support of that claim, particularly Mr. Hall's testimony, shows that all the conduct that was being challenged took place before the contract was being, was entered into. Now, with respect to another point that was made in my friend's presentation, we believe that, oh, this is actually to respond to a question that Judge Clifton posed in my original presentation. Pacific Fuel in its fraud claim didn't seek rescission. We sought rescission as part of our affirmative defense of fraud. Pacific Fuel did not seek rescission. They actually sought damages on the contract. And that's part of the reason why we were not standing on the contract. The existence of the contract wasn't at issue in litigating Pacific Fuel's fraud claim. So that was just to follow up on Judge Clifton's point. What complicates this for me, because in fact their fraud claim wasn't trying to disavow the contract. It was sort of embedded within the contractual claim. You wind up defending against the contractual action. Yes, Your Honor. But based on saying, well, there shouldn't have been a contract in the first place, fraud in the inducement. Yes. I'm getting a headache. Yes, Your Honor. Because what's so different about the two? Yes, Your Honor. I mean, we were asserting two different theories. In our affirmative defense of fraud, we were pleading and we proved up fraud in the inducement. We also sought damages on our breach of contract counterclaim. And this gets to Judge McKeown's questions about the election of remedies. The theory, the election's theory that was advanced by Pacific Fuel in its brief is that the affirmative defense of fraud should never have been presented to the jury because before trial, Equilon had already elected a contract remedy. And that's simply not the case. With respect to the prior State court action in which Equilon sought to recover the monies that had been improperly retained by Pacific Fuel, we couldn't have made an election because we were not aware of the fraud. We only learned about the fraud in the discovery in the district court action. So that couldn't be an election. And the mere assertion of a breach of contract counterclaim in the litigation below couldn't be an election because the party is entitled to assert a breach of contract action and at the same time seek rescission under a fraud theory. It's certainly entitled to plead that and to prove it up. You know, I share Judge Clifton's headache on this case. Let me see if I can figure out what's going on here with respect to the fraud claim upon which Pacific Fuel recovered. They claim that Shell promised something. The promise is incorporated into the contract. The promise was fraudulent. That is to say they knew at the time of the promise that they were not going to be able or would not deliver on it. And we end up then with the promise that's contained in the contract not being honored and they recover on a fraud claim. But it's a fraud claim that's deeply tied to the contract. And you're saying, however, that doesn't come within the clause with respect to damages arising out of the contract. I mean, that's the position, right? Judge Fletcher, I want to be careful here because I believe that the fraud theories that the jury ended up finding for Pacific Fuel on were of intentional misrepresentation and concealment, not false promise. Now, that theory had been advanced at trial, but I believe that the jury verdict found on concealment and intentional misrepresentation. But there's no question that the subject matter of the fraud claim and the subject matter of the breach of contract claim had significant overlap, that they were the same issues that were addressed by both of those claims, that it had to do with the expense allowance and compensation. And that is the source of confusion. But there was certainly no acknowledgment by trial counsel. There's no concession. And we set this out in our briefs that the claims were somehow co-extensive. They weren't. When trial counsel, the quoted passages where trial counsel is discussing the overlap, the factual overlap between the two cases, had to do with a causation theory, and the causation theory ran like this. Pacific Fuel is not entitled to recover the damages on its fraud claim, because those run through the performance of the contract, and they're traceable back to Mr. Hull's own fraud, and therefore that they couldn't recover those damages and the causation was cut off. Counsel was not talking about the source of the duty underlying Pacific Fuel's fraud claim, which is not contractual. It's based on a general duty of law. And he certainly wasn't commenting on the conduct that underlie that claim, which was pre-contractual. And that's actually reflected in counsel's comment. Kennedy. But the same is true of your affirmative defense on the contract action. I'll recall that you successfully defended against plaintiffs' contract action. Yes, Your Honor. And seek attorney's fee for that based on fraud in the inducement. That is, the fraud of the plaintiffs in representing themselves and getting Epcoline to enter into the contract. I just have trouble seeing how that's any different, other than the fact that that claim is a denominated contract and would have an effect on how you calculate what kind of damage claim you can make. But how is the factual assertion any different? Well, Your Honor, I – are we getting – is Your Honor's question directed toward the attorney's fees issue again? I just want to make sure.   Yes. Your Honor, I think the key thing is that there was a breach of contract action that we were defending. That's the key – it's the nature of the claim that's important for purposes of the attorney's fees analysis. And so we indeed defended the action by asserting an affirmative defense of fraud, but it was a breach of contract claim. That's really as simple as saying the label on this count is contract. The label on this claim or count over here is tort. You should get attorney's fees for this one if you prevail. You don't get attorney's fees for this one if you prevail. Is that what amounts to – because the factual allegations all seem the same. Yes, Your Honor. In this context, when you have an attorney's fees provision that is written this way that focuses on the contract claims, the answer is yes. Now, you could imagine a scenario where you have an attorney's fees provision that is broader and that could reach tort claims, and then you have to consider all the claims. But in a case like this, where you have an attorney's fees provision that's really limited to contract claims, those are the claims that you consider for purposes of the attorney's fees analysis. That's right, Judge Fletcher. But, of course, I think, you know, they're saying really this whole issue of the fuel expenses, et cetera, it really ran from the beginning all the way through the contract. So it, in effect, becomes the foundation for their claim. And, therefore, it's one and the same. Well, in fact, there's certainly factual overlap. But the key point for purposes of the attorney's fees analysis is what the nature of the claim is. And you have to look at the legal duties that are being asserted. They're not contractual duties. It's a fraud claim based on fraud and the inducement. They're general legal obligations. But I do want to get back to Judge McEwen's question about election of remedies, because I didn't get to make the point that the specific election of remedies theory that was advanced by Pacific Fuel not only, I think, fails on the merits, but it was also waived. Their theory is that the affirmative defense of fraud should never have been submitted to the jury at all, because at that point, Equilon had already made an election. Now, our position is we hadn't made an election and couldn't have, indeed, by that point. But even bracketing that for the moment, they didn't raise this theory until the case was already submitted to the jury. And California cases are clear that waiver ought to be applied quite strictly when it comes to the election of remedies. And so on the specific elections theory that they have advanced, they clearly waived the argument because they didn't raise it before the case had been submitted to the jury. They didn't raise it in the conference on jury instructions. They didn't raise it at the pretrial conference. They never brought a summary judgment motion on that theory. By the time they raised it, it was simply too late. Thank you, Your Honor. Thank you, Your Honor. When my colleague describes the contract or the fee provision as only contract related, that ignores much of the language of the fee provision. It awards fees to the party that incurs fees, quote, in order to secure, defend, protect the rights inuring to the prevailing party under this agreement. It so conceives that that could go outside the realm of contract law that in the next sentence, it references in the fee provision claims for punitive damages. As this Court knows, punitive damages cannot be recovered in contract claims. They can only be recovered in tort claims. This specifically envisions the type of tort claim that could secure, defend, or protect the rights inuring the prevailing party under the agreement. I saw that those sentences followed immediately one upon the other. But the second sentence says, in the event of litigation between the parties, I guess there's an inference that that last sentence that talks about waiving punitive damages is coextensive with what's referred to in the prior sentence, but it's not explicitly stated. You're correct. It is not explicitly stated. But if you look at the- It didn't seem to be related to attorney's fees so much as making sure that you have a felt suspenders if there's no punitive damages, which there could be, you know, I guess there's one or two states that might permit it under odd circumstances, correct? There is actually Vermont that's referenced, but Vermont is actually not even equal on the signatory of the contract doesn't even operate in the state of Vermont. There aren't even any MSO stations in Vermont. But your position is that that relates to the same scope of the attorney's fees somehow? I'm saying if you look at the Harvard Investments case, the Harvard Investments case talks very clearly about the need when an attorney fee provision is not perfectly clear, and I think we can all agree that this attorney fee provision is not perfectly clear, that it's important to look at the entire context of the clause that the fee provision is in as well as any equitable considerations. Certainly the court has looked at the context of the fee provisions and has looked at the equitable considerations. It's looked as well, and I must come back to this provision again, the statements of Shell's trial counsel literally, quote, there can be no question that Pacific Fuels' fraud claims were merely the mere images of its breach of contract claim. Throughout the lower court proceedings, there was never any question that these were fraud claims that are not only reliant, they are dependent on the rights inuring out of paragraph 70 of the MSO agreement to exist. I'm glad you're doing this, but I do have one more question if you would indulge me to clarify this. Certainly, Your Honor. Did Judge Dilford distinguish between the 1021 and 1717 as to the basis, or was it kind of merged? He looked at both. There isn't a clear distinguishing between the two, but he does cite case law in that that applies to 1021, him giving that ruling, but he doesn't come out and specifically reference 1021. Thank you. Thank you, Your Honor. Thank you both for the briefing and argument in this dizzying case of fraud. I mean, you've both done a very good job of playing it out. It is a complicated case, so we thank you for the argument this morning. The case that's argued is submitted and adjourned for the morning.
judges: McKeown, W. Fletcher, Clifton, Cjj